UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

JEFFREY NATHAN LEWIS,                                    Case No.: 3: 11-CV-1458-AC

                                    Plaintiff,                    OPINION AND ORDER

                v.

FEDERAL AVIATION
ADMINISTRATION,

                                    Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Jeffrey Nathan Lewis ("Lewis"), dissatisfied with the response of defendant Federal

Aviation Administration (the "Administration") to seven of his more than one hundred and thirty

requests for documents under the Freedom of Information Act (5 U.S.C. § 552) (the "Act"), seeks

review of the Administration's actions in providing him redacted versions of three documents and

not conducting searches after Lewis failed to agree to pay the costs assessed by the Administration

Page 1 - OPINION AND ORDER                                              *{SIB}*

for such searches. The Administration moves for summary judgment, arguing the redacted information was exempt from disclosure and Lewis's failure to agree to pay the costs, or to appeal the amount assessed, constitutes failure to exhaust administrative remedies.

The court finds that the Administration properly redacted information under the deliberative process and attorney-client privileges and that Lewis failed to exhaust his administrative remedies with regard to the other requests. The Administration is entitled to summary judgment on all of Lewis's claims.[1]

*Background*

Lewis, an air traffic controller employed by the Administration for twenty-two years, lost his job in November 2008. Lewis filed numerous requests under the Act for information related to his discharge. In this action, Lewis asks the court to review the Administration's response to seven of those requests.

I. Exemption 5

The Administration withheld information responsive to two requests claiming the information was exempt from disclosure under Exemption 5 of the Act.

*A.  Request No. 2011-004258*

On March 17, 2011, Lewis submitted a request under the Act for four emails dated either July 7, 2008, or July 8, 2008, originated or received by Don Bobertz, Agency Attorney in the Office of the Regional Counsel ("Bobertz"), containing the phrase "Jeffrey Lewis Proposed Removal Letter" in the subject line. (Kreischer Decl. Ex. 1 at 1-2.) On April 29, 2011, William C. Withycombe, the

---

[1]The parties have consented to jurisdiction by magistrate in accordance with 28 U.S.C. § 636(c)(1).

Administration's Regional Administrator ("Withycombe") advised Lewis that Bobertz had located three of the four emails but that such emails, which were internal communications between a labor specialist and an attorney containing legal advice, were being withheld under Exemption 5 of the Act.  (Kreischer Decl. Ex. 1 at 3-4.)  Lewis appealed Withycombe's decision and sought copies of the emails.  (Kreischer Decl. Ex. 1 at 5-6.)  On November 3, 2011, Victoria B. Wassmer, the Administration's  Assistant Administrator for Finance and Management ("Wassmer"), found that two of the emails were appropriate for release in their entirety, one of which was the recently located fourth email, and that the header information and a few sentences in the other two emails was also appropriate for release.  (Kreischer Decl. Ex. 1 at 14-15.)  Wassmer explained that the "remaining contents of these two e-mails were properly withheld under the deliberative process privilege of Exemption 5.  I also find that the e-mails qualify for protection under the attorney-client privilege of the Exemption."  (Kreischer Decl. Ex. 1 at 15.)

   *B.  Request No. 2011-9148*

   On September 1, 2011, Lewis submitted a request under the Act for an email dated April 5, 2008, between Ros Marable ("Marable") and Dick Fossier ("Fossier"), both in the Administration's Human Resources Department, identified as "SFO Hot Issues" in the subject line.  (Kreischer Decl. Ex. 7 at 1.)  The Administration provided Lewis a copy of the email with portions redacted under Exemption 5.  (Kreischer Decl. Ex. 7 at 3.)  Lewis appealed the Administration's decision seeking an unredacted copy of the email.  (Kreischer Decl. Ex. 7 at 4.)  On January 26, 2012, Wassmer released some of the redacted information but continued to withhold a portion of one sentence under

Exemption 5.[2]  (Kreischer Decl. Ex. 7 at 7.)

II.  Failure to Pay

The Administration did not search for, and consequently did not release, additional documents responsive to five other requests based on Lewis's failure to agree to pay the costs associated with the search to find and produce such documents.

*A.  Request No.  2010-003323*

On March 2, 2010, Lewis submitted a request under the Act for "copies of all emails related to me (please search for the word Lewis in the subject line or text) dated between 4/1/08 and 3/1/09, sent or received by Daniel Castrellon".  (Kreischer Decl. Ex. 2 at 1.)  In the event Daniel Castrellon, Acting Manager of the Administration's Labor/Employee Relations Branch ("Castrellon") was unable to produce the emails, Lewis requested that an "archival search be conducted" by the information technology team.  (Kreischer Decl. Ex. 2 at 1.)  Lewis subsequently expanded the search parameters to documents dated between July 1, 2007, and March 1, 2009.  (Kreischer Decl. Ex. 2 at 2.)  On April 28, 2010, the Administration provided Lewis with five emails responsive to his request and advised him there were no other pertinent emails.  (Kreischer Decl. Ex. 2 at 3.)  Lewis appealed the Administration's response arguing that he had substantial evidence that Castrellon had "many other more substantial emails to produce".  (Kreischer Decl. Ex. 2 at 4.)  On September 26, 2011, Douglas C. Taylor, Ph. D., the Administration's Director of Administration ("Taylor"), advised Lewis by letter that the cost of conducting a more extensive search was $900 and that Lewis must explicitly agree to pay this amount before a search would occur.  (Kreischer Decl. Ex. 2 at 26

---

[2]The Administration also continued to withhold the name of an employee involved in a separate, unrelated arbitration under Exemption 6.  This redaction is not at issue.

n.1.)  Subsequently, in a letter dated November 9, 2011, Wassmer found that the initial search was more than adequate.  (Kreischer Decl. Ex. 2 at 27.)  Lewis never agreed to pay the costs nor did he object the amount of the costs.

### B.  Request No. 2010-004091

On March 29, 2010, Lewis submitted a request under the Act for "all emails to and from Monique France, related to me, during the time window from 7/1/06 to 3/1/09."  (Kreischer Decl. Ex. 3 at 1.)  On June 7, 2010, the Administration informed Lewis that the search conducted pursuant to his request revealed no responsive emails.  (Kreischer Decl. Ex. 3 at 16.)  Lewis appealed the Administration's response complaining about the lack of record keeping and questioning whether Monique France, Executive Staff Advisor of Terminal Operations for the Administration ("France") was secretly withholding or had intentionally destroyed records.  (Kreischer Decl. Ex. 3 at 17.) Lewis suggested that the records could be obtained through searches by other Administration employees or from the Administration's daily backup archival tapes.  (Kreischer Decl. Ex. 3 at 17.) In a letter dated November 3, 2011, Wassmer effectively denied Lewis's appeal, finding that the search performed by France was more than adequate.  (Kreischer Decl. Ex. 3 at 19.)  Again, while the appeal was pending, Taylor advised Lewis, by letter dated September 26, 2011, that the cost of conducting a more extensive search was $900 and that Lewis had to explicitly agree to pay this amount before a search would occur.  (Kreischer Decl. Ex. 3 at 19 n.1.)  Lewis did not agree to pay the costs and did not object the amount of the costs.

### C.  Request No. 2010-005324

On May 22, 2010, Lewis submitted a request under the Act for copies of disciplinary letters in all formal disciplinary actions against air traffic controllers at specified locations between June

1, 2006, and September 1, 2009.  (Kreischer Decl. Ex. 4 at 1.)  On August 16, 2010, the Administration forwarded copies of two pages of responsive records with information redacted under Exemption 6 and an invoice for $225.50 to cover the cost of the search.  (Kreischer Decl. Ex. 4 at 2.)  Lewis forwarded a check for $225.50 to the Administration but protested the charges and requested the check be returned uncashed.  (Kreischer Decl. Ex. 4 at 6-7.)  Two days later, Lewis appealed the Administration's response asserting the search was not adequate and  information was improperly redacted.  (Kreischer Decl. Ex. 4 at 4.)  On September 19, 2011, Taylor remanded the request for additional response.  (Kreischer Decl. Ex. 4 at 5.)   On October 28, 2011, Tim Kubik, Director of the Administration's Human Resource Management Office ("Kubik"), informed Lewis that the  processing of his request would require an additional  thirteen hours of search time at $50 per hour for a total of $550.00, after subtracting two hours of free search time.  (Kreischer Decl. Ex. 4 at 8.)  Kubik advised Lewis that "to continue processing your request, we need an indication from you that you agree the pay the fee. . . .  If we have not heard from you within 20 business days, we will consider this request withdrawn and close our records"  (Kreischer Decl. Ex. 4 at 8.)  Lewis did not agree to pay the costs and did not object the amount of the costs.

   *D.  Request No. 2010-005390*

   On May 29, 2010, Lewis submitted a request under the Act for all emails sent or received by Kubik from February 1, 2007, through November 30, 2008, with test or subject lines  mentioning "Jeff", "Lewis", "Ralph", "CCR", or "Concord".  (Kreischer Decl. Ex. 5 at 1.)  Lewis noted that he was willing to pay a reasonable fee for copies of the records.  (Kreischer Decl. Ex. 5 at 1.)  By letter dated June 28, 2010, Kubik informed Lewis that his email archives did not go back to 2007, the Administration's tape library goes back only to March 2008, and the cost for the obtaining the

records requested from March 2008 through November 30, 2008, was $3,300, representing the 66 hours needed for restoration of the tapes at $50 per hour.  (Kreischer Decl. Ex. 5 at 3.)  In a letter dated July 21, 2010, Kubik responded to questions proffered by Lewis regarding the cost of the search.  (Kreischer Decl. Ex. 5 at 4.)   Lewis withdrew this request by email dated July 29, 2010. (Kreischer Decl. Ex. 5 at 6.)

   *E.  Request No. 2011-6114*

   On May 15, 2011, Lewis submitted a request under the Act for emails in Fossier's archives as of the close of business on June 7, 2008, related to "Lewis", "Concord", or "CCR", and agreed to pay up to $50 for the search.  (Kreischer Decl. Ex. 6 at 1.)  On October 12, 2011, Kubik again advised Lewis that the tape library goes back only to March 2008, provided Lewis with an estimate of $800 for the search, representing eighteen hours of search time at $50 per hour less the two free hours, and cautioned Lewis that if the Administration had not heard from Lewis in twenty days, it would consider the request withdrawn.  (Kreischer Decl. Ex. 6 at 3.)   Lewis again questioned the manner in which the Administration arrived at the estimate but did not agree to pay the costs or otherwise object the amount of the costs.

## III.  Lewis's Evidence

   In opposition[3] to the Administration's motion for summary judgment,  Lewis provides in-depth background information supporting his complaints with regard to his termination and documents to support such complaints.  The court acknowledges the receipt and existence of such evidence but finds that it is not relevant to the action at hand, which is limited to consideration of

---

   [3]On June 1, 2012, after the Administration filed its motion for summary judgment, the court issued a Summary Judgment Advice Notice informing Lewis, who is appearing *pro se*, of his obligations in responding to a motion for summary judgment.

whether the Administration properly responded to Lewis's request for records under the Act.

*Legal Standard*s

I.  Generally

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2012).  Summary judgment is not proper if material factual issues exist for trial.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  *Id*. at 324.  A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements.  *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).  Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party.  *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982).  All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party.  *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).  Where different ultimate inferences may be drawn, summary judgment is inappropriate.  *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits.  A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence.  FED. R. CIV. P. 56(c) (2012).  The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

## II.  Under the Act

Actions filed under the Act are typically resolved through summary judgment motions. *Manna v. U.S. Dep't of Justice*, 832 F. Supp. 866, 870 (D.N.J. 1993).  To prevail on summary judgment, the government agency must prove "that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Nat'l Cable Television Ass'n, Inc. v. Federal Commc'ns Comm'n,* 479 F.2d 183, 186 (D.C. Cir. 1973); *see also Marks v. U.S. Dep't of Justice,* 578 F.2d 261, 262 (9th Cir. 1978) (citing *Nat'l Cable*, 479 F.2d at 186).

The agency has the burden of establishing that one or more of the Act's nine exemptions justify its withholding of documents.  *Hronek v. Drug Enforcement Agency, et al.*, 16 F. Supp. 2d 1260, 1265 (D. Or. 1998).  The agency may satisfy this burden by submitting an affidavit or index containing reasonably detailed descriptions of the documents and alleging facts sufficient to establish an exemption.  *Lewis v. Internal Revenue Serv.,* 823 F.2d 375, 378 (9th Cir.1987).  The affidavit must be provided by the agency employee responsible for supervising the search; an affidavit from each person who participated in the actual search is not required.  *Hronek*, 16 F. Supp. 2d at 1267-68

(citing *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 813 (2nd Cir. 1994)).  If the agency supplies reasonably detailed materials, "then the district court need look no further in determining whether an exemption applies." *Church of Scientology v. U.S. Dept. of Army,* 611 F.2d 738, 742 (9th Cir. 1979).

The agency's responsibility to provide appropriate affidavits, indexes, and other materials is key to the court's and plaintiff's ability to assess the agency's response.  Because of the unique nature of cases brought under the Act, the plaintiff does not have access to the withheld materials and is at a distinct disadvantage in attempting to controvert the agency's claims where only the agency has access to all the facts." *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997).  Thus, the agency is required to submit affidavits and other materials that are sufficiently detailed and made in good faith. *Simmons v. U.S. Dep't of Justice*, 796 F.2d 709, 712 (4th Cir. 1986).  This is particularly true in the Ninth Circuit, which "requires agencies to explain the reasons for withholding documents with specificity by 'tailor[ing] the explanation to the specific document withheld.'" *Hronek*, 16 F. Supp. 2d at 1265-66 (quoting *Wiener v. Fed. Bureau of Investigation*, 943 F.2d. 972, 979 (9th Cir. 1991)).  Consequently, the agency must disclose as much information as possible, and state its objections with sufficient specificity, without compromising the information it claims is exempt from disclosure. *Wiener*, 943 F.2d at 979.

To accomplish these competing goals, the agency must provide, where appropriate, a *Vaughn* index that "identifies each document withheld and the statutory exemption claimed for each document, and sets forth 'a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption.'" *Maricopa*, 108 F.3d at 1092 n.1 (quoting *Wiener*, 943 F.2d at 977).  The purpose of the index is to "afford the . . . requester a

meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987). The court also may, in its discretion, examine the documents at issue and make a "first-hand determination of their exempt status", where the affidavits are "too generalized" or the number of documents at issue are few and relatively brief. *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1136 (quoting *Lewis*, 823 F.3d at 378; *Church of Scientology*, 611 F.2d at 742). However, such review shall neither excuse the government from meeting its burden, nor shall it occur when the government's burden is otherwise met. *Lewis*, 823 F.3d at 378. Once the government has met this burden, "the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Carney*, 19 F.3d at 812-13 (citations omitted).

## III.  Standard of Review

The decision by an agency that documents requested by the public under the Act are not subject to disclosure is reviewable by the federal courts under the Administrative Procedures Act (5 U.S.C. §§ 702, 706). *Chrysler Corp. v. Brown,* 441 U.S. 281, 317 (1979); *see also Klamath Siskiyou Wildlands Ctr. v. U.S. Dep't of Interior*, No. 07-325-CL, 2007 WL 4180685, at *4 (D. Or. Nov. 21, 2007). The court reviews *de novo* all relevant questions of law, statutory and constitutional interpretation, and meaning or applicability of terms. 5 U.S.C. § 706 (2012). The court reviews the agency's actions, findings, and conclusions under the arbitrary and capricious standard found in 5 U.S.C. § 706(2)(A). *Frazee v. Forest Service, U.S. Dep't of Agric.*, No. 94-1007-AS, 1995 WL 917631, at *3 (D. Or. March 5, 1995).

The arbitrary and capricious standard requires the court to carefully review the record to ascertain whether the agency decision is founded on a reasoned evaluation "of the relevant factors and whether there has been clear error in judgment." *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360,  (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971)).  The inquiry must be "searching and careful," but "the ultimate standard of review is a narrow one." *Id*.  "An agency's decision may only be called arbitrary and capricious if: 'the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Sw Center for Biological Diversity v. U.S. Forest Serv.,* 100 F.3d 1443, 1448 (9th Cir.1996) (citations omitted).

*Discussion*

I.  Exemption 5

The Act "mandates a policy of broad disclosure of government documents when production is properly requested." *Church of Scientology*, 611 F.2d at 741-42.  The Act states, in part, that each governmental agency ". . . upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the record promptly available to any person."  5 U.S.C. § 552(a)(3) (2012).  This requirement is subject to nine specific exemptions, as outlined in 5 U.S.C. § 552(b).  *Id.* ("When a request is made, an agency may withhold a document, or portions thereof, only if the information contained in the document falls within one of nine statutory exemptions to the disclosure requirement contained in § 552(b).").  "These statutory exemptions are exclusive and

must be narrowly construed." *Manna*, 832 F. Supp. at 870 (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

Here, the Administration asserts that it properly withheld information in three emails under Exemption 5 of the Act. Exemption 5, found at 5 U.S.C. § 552(b)(5), exempts from production under the Act "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (2012). The United States Supreme Court has held that "Exemption 5 simply incorporates civil discovery privileges:  'The test under Exemption 5 is whether the documents would be "routinely" or "normally" disclosed upon a showing of relevance.'" *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984) (quoting *Federal Trade Comm'n v. Grolier Inc.*, 462 U.S. 19, 26 (1983)). The exemption is "interpreted to encompass, *inter alia*, three evidentiary privileges:  the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege." *Tax Analysts v. Internal Revenue Serv.*, 294 F.3d 71, 76 (D.C. Cir. 2002) (citing *Burka v. U.S. Dep't Health and Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996)). The Administration relies on both the deliberate process privilege and the attorney-client privilege as appropriate authority for the withholding of the information at issue.

A.  *Deliberative Process Privilege*

The deliberative process privilege generally "shields from public disclosure confidential inter-agency memoranda on matters of law or policy." *Nat'l Wildlife Fed' v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988) (citing *Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 772 (D.C. Cir. 1988) (en banc)). Documents protected by the deliberative process privilege "must be *both* (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,'

meaning 'it must actually be related to the process by which policies are formulated.'"  *Id.* at 1117

(emphasis in original) (quoting *Jordan v. U. S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)).

In addition to communications found within the documents requested, this privilege also applies to

factual information to the extent that disclosure of factual information would reveal the deliberative

process itself.   *Wolfe*, 839 F.2d at 774 ("In some circumstances, even material that could be

characterized as factual would so expose the deliberative process that it must be covered by the

[deliberative process] privilege."); *see also Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048

(D.C. Cir. 1982) ("Where, however, disclosure of even purely factual material would reveal an

agency's decision-making process Exemption (b)(5) applies."  (citing *Mead Data Central, Inc. v.*

*U. S. Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977))).  In analyzing this privilege, it is

helpful to keep in mind the three essential policy reasons that underlie the privilege:

> First, it protects creative debate and candid consideration of alternatives within an
> agency, and, thereby, improves the quality of agency policy decisions.  Second, it
> protects the public from the confusion that would result from premature exposure
> to discussions occurring before the policies affecting it had actually been settled upon.
> And third, it protects the integrity of the decision-making process itself by confirming
> that 'officials should be judged by what they decided[,] not for matters they
> considered before making up their minds.'

*Russell*, 682 F.2d at 1048 (quoting *Jordan*, 591 F.2d at 772-73).

The Administration argues that the deliberate process exemption applies to the material

redacted from the three emails provided to Lewis.   The Vaughn Index provided by the

Administration explains that the redacted materials precede the decision on what disciplinary action

should be taken against Lewis and contain recommendations made by Bobertz and Fossier with

regard to the appropriate disciplinary action.   The court has reviewed the three emails, and the

information redacted therefrom, and finds that the Vaughn Index properly describes the redacted

information and that the information was protected and properly redacted under the deliberate process privilege. The Administration's redaction of this information is consistent with the three essential policy reasons for the deliberate process privilege in that it improves the decision-making process by protecting creative debate and candid consideration of alternatives within the agency.

   B. *Attorney-Client Privilege*

Confidential attorney-client communications are also protected from disclosure by Exemption 5. This privilege

> protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services. The privilege also protects communications from attorneys to their clients if the communications "rest on confidential information obtained from the client." In the governmental context, the "client" may be the agency and the attorney may be an agency lawyer.

*Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)). Furthermore, "the attorney-client privilege is broad enough to cover communications by individual government employees with the agency's attorneys." *United States v. Ferrell*, No. CR07-0066MJP, 2007 WL 222-213, at *2 (W.D. Wa. Aug 1, 2007).

The Administration redacted information from emails between Bobertz and Marable in which Bobertz, an attorney for the Administration, provided advice in response to a request from Marable on the proper handling of Lewis's discipline. In the Vaughn Index, the Administration indicates that the redacted portions of the emails imparts "confidential, litigation-sensitive advice, conveyed to an employee in the Labor Relations, Training & Benefits Branch at her request." (Kreischer Decl. Ex. 8 at 2.) A review of the redacted information confirms this description. The Administration acted properly in relying on the attorney-client privilege to redact this information before providing the emails to Lewis.

### C.  Bad Faith

Lewis asserts that the Administration is not entitled to summary judgment because it is not able to "dodge all charges of 'bad faith'". (Pl.'s Mem. Oppposing MSJ at 3.)  In support of his allegations of bad faith, Lewis relies on the Administration's alleged mishandling of many of his requests under the Act, while acknowledging that some of the disputes have been resolved and the Administration eventually produced additional documents improperly withheld.  Additionally, Lewis relies on the decision by the Administration to terminate him and its refusal to provide him with information to support that decision.   While these allegations may establish a contentious relationship between Lewis and the Administration, they do not impugn the affidavits offered by the Administration or provide tangible evidence that the Administration acted improperly in redacting information under Exemption 5.

## II.  Failure to Pay[4]

Plaintiffs seeking information under the Act have a duty to exhaust their administrative remedies before invoking federal court review.  *In re Steele*, 799 F.2d 461, 465-66 (9th Cir. 1986).  Where a plaintiff has failed to exhaust his remedies before the administrative agency, the district court will dismiss the case for lack of jurisdiction.  *Id*.  The purposes underlying the exhaustion doctrine include the opportunity for the agency to exercise its discretion and expertise and the opportunity to make a record for the district court to review.  *McKart v. United States*, 395 U.S. 185, 194-95 (1969).

The Act authorizes government agencies to charge fees for document search, duplication, and

---

[4]Initially, the Administration characterized Lewis's claim as a "pay-to-play" claim.   Based on concerns expressed by Lewis, the Administration stipulated that Lewis's claims are based on his refusal to agree to pay a search fee rather than his failure to pay such fee.

review.  5 U.S.C. § 552(a)(4)(A) (2012).  However, documents shall be provided without charge or

at a reduced rate in certain circumstances, such as where disclosure of the information is in the public

interest and not primarily in the commercial interest of the requester.  5 U.S.C. § 552(a)(4)(A)(iii)

(2012).  To benefit from reduced or waived fees, the requester must request a fee waiver from the

administrative agency.  5 U.S.C. § 552(a)(4)(A) (2012).   Exhaustion of administrative remedies

under the Act "does not occur until the required fees are paid or an appeal is taken from the refusal

to waive fees."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 66 (D.C. Cir. 1990).

The Administration advised Lewis by letter that full responses to five of his requests would

require extensive searches costing between $550 and $3,300.   In his opposition materials, Lewis

does not dispute receiving these letters or that he did not respond to, or complain about, the assessed

charges.[5]  He does not dispute that he did not pay, or agree to pay,[6] the charges, request a fee waiver

or otherwise exhaust his administrative remedies.  He complains only that, based on fees assessed

for other requests, the fees at issue are exorbitant and intended to prevent him from exercising his

rights under the Act.

Lewis did assert for the first time at oral argument that he felt he had appealed the

excessiveness of the assessed charges and offered to provide the court with the documents

establishing such appeals.[7]  Two of the three documents Lewis subsequently provided relate only to

---

[5]Lewis did withdraw one of his requests after the Administration advised him of the $3,300 cost to search for the requested documents.

[6]In fact, the parties have stipulated that Lewis never agreed to pay the estimated fees for processing the remaining four requests.

[7]In the memorandum accompanying the supplemental documents, Lewis offers to withdraw Request No.'s 2010-005324 and 2010-005390 if the court directs the Administration to produce records responsive to Request No. 2011-6114 for a reasonable charge in the vicinity of $100.

Request Nos. 2010–003323 and 2010-004091, and establish an ongoing conversation between Lewis and Taylor regarding the proper handling of the requests after the initial appeal and the assessment of a $900 charge to conduct the more extensive searches requested by Lewis.  In response to the assessment, Lewis stated:

> I'm going to have to think about this one, given the high costs.  It appears you are indicating they would do a series of monthly archive checks, each search costing roughly $80. This is a bit steep but not too inconsistent with the costs of prior archival searches.  It seems to make more sense for me to review my records, including the 5,000+ pages I have received since the oldest of these two Appeals was filed, and be a bit more surgical with specific-date Appeal requests.  Please advise if there is anything incorrect in my comprehension of your fee estimate.

(Pl.'s Doc.'s Responsive to Judge Acosta's Request ("Pl.'s Supp. Doc.'s") Ex. 1c).  With regard to Request No. 2010-003323, Lewis indicated he may still be interested in doing an archival search for Castrellon's emails for one key date or might withdraw the appeal if documents responsive to Request No. 11-4047 are produced. With regard to Request No. 2010-004091, Lewis noted that France destroyed many emails and other records which reduced the "likelihood of a successful forensic reconstruction" and suggested Taylor take a closer look at Request No. 11-6252 to find the key record.  (Pl.'s Supp. Doc.'s Ex. 1c).  Taylor responded by explaining that "it is foreseeable that a NEXTGEN search for one month's worth of data would cost substantially more than the $80 you estimated", the Administration would be willing to wait to proceed with the requests pending the response to the other requests mentioned by Lewis, and the Administration is responsible for producing only existing agency records.  (Pl.'s Supp. Doc.'s Ex. 2a).  Lewis indicated that while he appreciated Taylor's offer to delay pending responses to other requests, he wanted to wrap things up

───────────────

Because the court finds that Lewis did not exhaust his administrative remedies with regard to any of these Requests, it declines Lewis's offer.

and would be interested in pursuing the requests if the delay would not be too extensive.  (Pl.'s Supp. Doc.'s Ex. 2b).  The third supplemental document offered Lewis is a Memorandum released by the White House on January 1, 2009, discussing the need to administer the Act with openness and in favor of disclosure.  (Pl.'s Supp. Doc.'s Ex. 3)

The supplemental documents provided by Lewis do not relate to, and do not evidence an appeal of, the assessed charges in Request No.'s 2010-005324, 2010-005390, 2011-6114.  Even with regard to the Requests discussed in the supplemental documents, the documents establish only a conversation about the underlying requests and the possibility of delaying or narrowing the requests to lessen the amount assessed, not a clear complaint about the amount assessed, a request for a waiver of the amount assessed, or an agreement by Lewis to pay the amounts assessed.

Based on the absence of a factual dispute with regard to Lewis's failure to pay, failure to agree to pay, failure to seek a waiver of, or failure to complain about the fees assessed by the Administration at the administrative level, the court finds that Lewis failed to exhaust his administrative remedies.  Accordingly, the Administration is entitled to summary judgment on these requests.

## Conclusion

The Administration's motion (#28) for summary judgment is GRANTED in its entirety.

DATED this 7th day of January, 2013.


            /s/  John V. Acosta
                JOHN V. ACOSTA
            United States Magistrate Judge